1

2                    UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4

5   CHARLES BYON NISHI,

6            Plaintiff,                        No. C11-0438 PJH

7       v.                              **ORDER GRANTING DEFENDANTS'**
                                        **MOTION FOR SUMMARY JUDGMENT**
8   COUNTY OF MARIN, et. al.

9

10           Defendants.
    _____/
11

12       Defendants' motion for summary judgment came on for hearing before this court on

13  February 15, 2012.  Plaintiff Charles Byon Nishi ("Nishi" or "plaintiff"), pro se, did not appear

14  for the hearing.  Defendants Marin County Open Space District ("Marin County Open

15  Space"), Marin County Sheriff Deputies Brendon Bosse ("Bosse") and Robert McDaniels

16  ("McDaniels"), and Ranger Don Grafe (collectively "County defendants" or "defendants")

17  appeared through their counsel, Renee Giacomini Brewer.  Having read all the papers

18  submitted and carefully considered the relevant legal authority, the court hereby GRANTS

19  defendants' motion for summary judgment for the reasons stated below.

20                              **BACKGROUND**

21  A.   Background Allegations

22       This action arises out of plaintiff's claim that his civil rights were violated under 42

23  U.S.C. §§ 1982, 1983, and 1985.  Plaintiff alleges that on or about January 28, 2009,

24  Deputies Bosse and McDaniels, California Department of Fish and Game ("DFG") Agent

25  Rich Mead, and an unknown DFG agent or deputy[1] arrived at the Indian Valley Open

26  Space Preserve to investigate plaintiff's claim that two neighbors were poaching mountain

27  _____

28       [1] According to the motion for summary judgment, this unknown agent or deputy may
    have been Ranger Grafe.  See Motion for Summary Judgment ("MSJ") at 3: 22-23.

1   lions.  See First Amended Complaint ("FAC"), ¶ 3.1.  According to defendants' answer,

2   plaintiff himself called the deputies to report his neighbors' poaching activities.  See

3   Answer, ¶ 3.1.

4          After plaintiff relayed his observations of the poaching activities to the deputies and

5   agents, the deputies and agents spoke with plaintiff and accused him of stealing a Ranger's

6   gun.  FAC, ¶ 3.7.  The deputies and agents then "demanded to know" the location of

7   plaintiff's residence.  FAC, ¶ 3.8.  After a forty five minute search, the deputies and agents

8   located plaintiff's residence.  FAC, ¶ 3.9.  Plaintiff alleges that the deputies and agents

9   "ransacked [his] residence destroying property and chasing companion animals away from

10  [his] residence" without a search warrant.  Id.  Plaintiff further alleges that the deputies and

11  agents took his car keys and entered the locked vehicle, again without a warrant, in order

12  to search for the Rangers gun.  FAC, ¶ 3.10.  The only thing found during the search was a

13  single bird feather which plaintiff alleges was a turkey feather.  FAC, ¶ 3.11.  The deputies

14  and/or agents "disposed of [his] property."  FAC, 11:18-19, ¶ 3.14; Answer, ¶ 3.14.

15         That same day, plaintiff was cited for illegally camping on public land.  FAC, ¶ 3.12.

16  The ordinance that prohibits overnight camping without written permission is found at §

17  100.02.060 ("the camping ban") of the Marin County Open Space ordinances.  See

18  Request for Judicial Notice, Exhibit C at 4.  The deputies informed plaintiff that he had

19  seven days to move his belongings.  FAC, ¶ 3.13.  In their answer, defendants admit to

20  giving plaintiff time to move his belongings but do not specify how much time was given.

21  Answer, ¶ 3.13.

22         On several more occasions, plaintiff was asked to leave public land.  FAC, ¶ 3.16.

23  They are as follows:

24         On or about March 3, 2009, McDaniels arrived at plaintiff's campsite on public land

25  in response to a citizen complaint filed by Eric Roberts ("Roberts").  FAC, ¶ 3.17; Answer, ¶

26  3.17.  McDaniels informed plaintiff that he was illegally camping on public land and had until

27  the next morning to move or face arrest and confiscation of his property.  FAC, ¶ 3.17.

28  Plaintiff alleges that due to a disability, he could not move all of his property in the allotted

2

1   time.  Id.  As a result, his property was "illegally taken by Sheriff [Deputies]."  Id.  Plaintiff

2   asserts that Roberts and McDaniels conspired together to remove plaintiff from public land.

3   Id.

4          On or about July 24, 2009 and sometime in November 2009, Bosse and Grafe again

5   cited plaintiff for illegally camping on public land.  FAC, ¶ 3.18; Answer, ¶ 3.18.  Plaintiff

6   claims that Bosse also charged him for crimes that currently do not exist under any law or

7   ordinance.  Id.

8          Plaintiff alleges that there were additional instances in which plaintiff was "forced

9   from his residence."  Id.  He plans to address them in an amended complaint with newly

10  named defendants.  Id.

11         In the FAC, plaintiff also describes, at length, events that have no bearing on his

12  claims of civil right violations.  On at least fifteen occasions, from January 24, 2009 through

13  March 25, 2010, plaintiff witnessed unknown DFG agents, unknown rangers, and unknown

14  and known deputies (Bosse) poach and/or sport hunt protected animals on the Indian

15  Valley Preserve and College of Marin.  FAC, ¶ 3.20-3.21.  On or about February 3, 2010,

16  plaintiff alleges that an agent "shot toward or directly" at him, killing a nearby raccoon.

17  FAC, ¶ 3.21.  This raccoon was then placed inside a large black box that contained a

18  "deadly gas."  Id.  Plaintiff alleges he was exposed to the chemical due to his proximity and

19  downwind location and became sick and delirious.  Id.  On February 11, 2010, plaintiff filed

20  a complaint with the F.B.I in response to threats he received from Bosse.  FAC, ¶ 3.22.

21  These threats in turn arose from plaintiff's civil rights complaints and his citizen

22  investigation into a poaching scheme that involved DFG agents, deputies, and rangers.  Id.

23  The complaint concludes with plaintiff alleging that forty known and unknown law

24  enforcement officers, numerous dogs, three helicopters, two planes, and "thermo imagine

25  equipment" were used to "hunt" him down for over a year.

26  B.     Procedural History

27         Plaintiff originally filed the instant action against defendants DFG and DFG Game

28  Wardens Mead and Peter Georges (collectively "State defendants"), as well as against the

1   County defendants Marin County Open Space, Bosse, McDaniels, and Grafe.  Plaintiff's

2   three causes of action alleged civil rights violations pursuant to 42 U.S.C. §§ 1982, 1983,

3   and 1985(3).

4        On May 11, 2011, the court granted two motions to dismiss, one filed by the State

5   defendants, and the other by the County defendants.  With respect to the State defendants,

6   the court dismissed, with prejudice, plaintiff's claims against DFG based on Eleventh

7   Amendment immunity.  See Order Granting Motions to Dismiss, 1: 25-28.  To the extent the

8   individual State defendants were sued in their official capacities, the court also dismissed,

9   with prejudice, plaintiff's claims for prospective injunctive relief because plaintiff failed to

10  allege any grounds upon which the Ex part Young doctrine could apply.  Id. at 2: 18-20

11       With respect to the County defendants, the court dismissed plaintiff's claims on two

12  grounds, with leave to amend.  First, the court dismissed plaintiff's claim to the extent that it

13  alleged defendants' actions were based on non-existent law or regulation.  Judicially

14  noticeable facts submitted by defendants established the existence of relevant regulation.

15  See Order Granting Motions to Dismiss, 3: 17-19.  Second, to the extent that plaintiff

16  challenged the constitutionality of such regulation or law, the court dismissed his claim for

17  failing to allege sufficient facts.  Id. at 3: 19-22  The court noted a third possible ground for

18  dismissal, qualified immunity.  However, because defendants had not pled qualified

19  immunity as a defense, the court determined that it did not present an adequate basis for

20  dismissal.  Id. at 4: 15-17.

21       Plaintiff duly filed his amended complaint on May 27, 2011.  In addition to naming

22  the County defendants, the amended complaint continued to name the State defendants.

23  FAC at 5-6.  The amended complaint alleged the same causes of action as his original

24  complaint, namely, the violation of his civil rights under 42 U.S.C. §§ 1982, 1983, and 1985.

25  Id. at 6.

26       On December 20, 2011, the County defendants moved for summary judgment or in

27  the alternative, summary adjudication.  See MSJ at 1.

28       Plaintiff did not file an opposition brief.  Accordingly, the County defendants did not

4

1 | file a reply brief.

2 | **DISCUSSION**

3 | A.    Legal Standard

4 | Summary judgment is appropriate when there is no genuine issue as to material

5 | facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

6 | Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

7 | Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

8 | is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

9 | A party seeking summary judgment bears the initial burden of informing the court of

10 | the basis for its motion, and of identifying those portions of the pleadings and discovery

11 | responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

12 | v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

13 | at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

14 | than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

15 | 888 (9th Cir. 2003).

16 | On an issue where the nonmoving party will bear the burden of proof at trial, the

17 | moving party can prevail merely by pointing out to the district court that there is an absence

18 | of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

19 | moving party meets its initial burden, the opposing party must then set forth specific facts

20 | showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

21 | R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

22 | B.    Legal Analysis

23 | Defendants generally argue that summary judgment must be granted in their favor

24 | because the camping ban is not unconstitutional and even if it is, the individual defendants

25 | are entitled to qualified immunity.  In support of their first position that the camping ban is

26 | not unconstitutional, defendants make three specific arguments: (1) the camping ban does

27 | not violate plaintiff's Fifth and Fourteenth Amendment rights, including his right to travel; (2)

28 | the camping ban does not conflict with Penal Code § 26; and (3) the camping ban is not

1    unconstitutionally void for vagueness.

2        1.    The camping ban does not violate plaintiff's right to travel.

3        The Marin County Open Space ordinance for which plaintiff was cited for violating is

4    § 100.02.060 ("the camping ban").[2]

5        Although the federal Constitution does not expressly recognize the right to travel,

6    this right is viewed as a fundamental right, rooted in the due process clause of the

7    Fourteenth Amendment. City of Chicago v. Morales, 527 U.S. 41, 53 (1999). The

8    California Constitution recognizes the right of intrastate travel as a basic human right

9    protected by article I, §§ 7 and 24. Tobe v. City of Santa Ana, 9 Cal. 4th 1069, 1100 (Cal.,

10   1995). The right to travel is considered a part of personal liberty, under which all citizens

11   can "travel throughout the length and breadth of our land uninhibited by statutes, rules or

12   regulations which unreasonably burden or restrict this movement." Id. at 1098.

13       Though the right to travel is deemed vital to the concept of a democratic society, it is

14   not so broad that it requires a state or governmental entity to provide its citizens with the

15   means to enjoy that right. Id. at 1103 (citing Harris v. McRae, 448 U.S. 297, 317-18

16   (1980)). It also does not give a citizen a "right to live or stay where one will," whether it is

17   on public or private property. Id. Moreover, the right to travel is not impermissibly infringed

18   by indirect or incidental burdens on travel that result from otherwise lawful ordinances. Id.

19   at 1101.

20       In Tobe, Santa Ana passed ordinances that banned camping and storing of personal

21   property in public places. Id. at 1081. Plaintiffs claimed that the ordinances were

22   unconstitutional because they restricted their right to travel. Id. at 1082, 1104. The

23   California Supreme Court concluded that Santa Ana was not constitutionally obligated "to

24   _____

25   [2] Although plaintiff claims three Marin County Open Space ordinances (§§ 100.01.030 Lands open to the public; 10.03.130 Unauthorized structures, encroachments and signs; and 100.02.060 Camping) are unconstitutional for violating his right to travel, the crux of his claims and the exclusive focus of defendants' arguments are on § 100.02.060, the camping ban. FAC, 10: 19-26.

26

27       The language of § 100.02.060 is as follows: "No person shall camp overnight or shall possess camping gear within district lands except by written permission from the district.

28   Camping gear includes sleeping bags, tents, or other articles associated with overnight camping." Request for Judicial Notice, Exhibit C at 4.

6

make accommodations on public property available to the transient homeless to facilitate their exercise of the right to travel." Id. at 1103.  Additionally, the court held that the ordinances were constitutionally valid because they were nondiscriminatory and had at best, an incidental impact on the right to travel. Id. at 110.  The ordinances were nondiscriminatory because they did not distinguish between residents and non-residents, or between those who were homeless and those who were not. Id. at 1101-02.  Rather, the ordinances prohibited "*any* person" from camping and/or storing personal property in public places. Id. at 1102.  As for the impact on the right to travel, the court acknowledged that the ordinances may deter travel by some individuals who cannot afford or obtain other accommodations in the area to which they travel, but found nevertheless, that the impact constituted only an incidental burden on the travel of some individuals. Id. at 1101.

Similar to the ordinances in Tobe, the camping ban in the instant case prohibits a person from camping on public property.  Defendants correctly assert that the camping ban is nondiscriminatory.  It does not distinguish between resident and non-resident, or between those who are homeless and those who are not.  The camping ban applies equally to everyone, as evidenced by the language, "no person."  The nondiscriminatory camping ban's impact on an individual's right to travel is at best, incidental.  Individuals, such as plaintiff, can freely move within the public land as part of their personal liberty.  The camping ban merely prohibits individuals from camping overnight without written permission.  As noted in Tobe, a government entity, such as the Marin County Open Space, is not constitutionally obligated to facilitate the right to travel.

The FAC cites to Pottinger v. City of Miami, 810 F. Supp. 1551 (S.D. Fla. 1992), to assert that the camping ban unconstitutionally burdens his right to travel.  FAC at 9: 22. Defendants in their motion for summary judgment contend that Pottinger is distinguishable.

In Pottinger, plaintiffs filed suit against the city of Miami for ordinances that prohibited people from engaging in essential, life-sustaining activities, such as sleeping, eating, standing, and congregating, in any public place, including the park, sidewalks, and public buildings. Id. at 1554, 1559-60.  The Pottinger court found that Miami had a pattern

7

1   of arresting homeless people in order to drive them away from public places.  Id.  Because

2   the ordinances "effectively bann[ed] homeless individuals from all public areas and deni[ed]

3   them a single place where they [could] be without violating the law," the court concluded

4   that the ordinances unconstitutionally burdened homeless individuals' freedom of

5   movement.  Id. at 1581.  The ordinances effectively prevented homeless people from

6   coming into Miami and burdened the freedom of movement of those already present.  Id.

7          The court finds that Pottinger is distinguishable from the instant case for several

8   reasons.  First, unlike the defendant in Pottinger, defendants here have not been shown to

9   have engaged in a pattern of targeting homeless people.  Plaintiff does not allege that

10  defendants have such a history.  Second, the camping ban is not as prohibitive as the

11  ordinances in Pottinger.  While the Pottinger ordinances prohibited various life-sustaining

12  activities, the camping ban prohibits only overnight camping and the possession of camping

13  gear, and even then, only if there is no written permission.  The camping ban does not

14  prohibit individuals from eating, standing or congregating on public land.

15          2.      The camping ban does not conflict with Penal Code § 26.

16          Under California Penal Code § 26, certain individuals are exempt from criminal

17  liability.  The relevant exemptions include "[p]ersons who committed the act charged

18  without being conscious thereof" and "[p]ersons who committed the act or made the

19  omissions charged through misfortune or by accident, when it appears that there was no

20  evil design, intention, or culpable negligence."  FAC, 10: 4-6; MSJ, 6: 25-28.

21          An unconscious act is one in which a person is not conscious of acting because of

22  "somnambulism, a blow on the head, or similar cause."  People v. Ferguson, 194 Cal. App.

23  4th 1070, 1083 (2011).  The act therefore is not volitional.  Id.  Unconsciousness is not

24  limited to lying still and being unresponsive.  Id.  It can exist "where the subject physically

25  acts in fact but is not, at the time, conscious of acting."  Id.  As for the term, "misfortune," it

26  can be defined as an accident while doing a lawful act.  People v. Gorgol, 122 Cal. App. 2d

27  281, 308 (1953).

28          Plaintiff argues that the camping ban violates Penal Code § 26 because it penalizes

him for sleeping, an unconscious and involuntary act.  FAC, 11: 1-3.  Because the daily act

of sleeping renders him unconscious, plaintiff is exempt from criminal liability pursuant to

Penal Code § 26.  He also contends that the camping ban violates Penal Code § 26

because his actions amounted to misfortune and Penal Code § 26 also exempts acts

based on misfortune.  Plaintiff does not specify any allegations to support his conclusory

reference to misfortune.  FAC, 11: 13.

Defendants respond that the camping ban does not violate Penal Code § 26 for two

reasons.  First, Penal Code § 26 does not even apply because the camping ban is not a

criminal statute and as such, does not require scienter.  <u>Northern Wind v. Daley</u>, 200 F.3d

13, 19 (1st Cir. 1999) (holding that "scienter is not required to impose civil penalties for

regulatory violations when the regulation is silent as to state of mind").  Second, even if

Penal Code § 26 did apply, plaintiff does not fall within the categories of exemption

because plaintiff was not unconscious while camping on public land and he did not camp by

misfortune or accident.

Though their first argument is untenable, the court agrees with defendants that the

camping ban does not violate Penal Code § 26.

Defendants incorrectly assert that the camping ban is not a criminal statute and as

such, Penal Code § 26 does not apply.  However, § 100.01.060, titled "Misdemeanors and

infractions," states that a violation of the camping ban is a misdemeanor.  Request for

Judicial Notice, Exhibit C at 7.  Given the possibility of criminal liability, Penal Code § 26 is

applicable and could potentially exempt an individual whose actions fell within one of the

categories of exemption.

Defendants, however, correctly contend that even if Penal Code § 26 applies, it

would not exempt plaintiff from liability because he fails to satisfy any of the exemption

categories.  With respect to an exemption based on unconsciousness, plaintiff's argument

that sleeping is an unconscious act sufficient to exempt him from criminal liability is not only

misplaced but does not conform to the definition of unconsciousness in the criminal law

context.  Plaintiff's unconsciousness while sleeping has no bearing on the real issue of

1   whether he was unconscious when he engaged in the act for which he was cited, namely,
2   illegally camping on public land.  As alleged in the complaint itself, plaintiff illegally camped
3   on public land and was cited for this violation several times over a period of a few months.
4   There appears to be nothing unconscious or involuntary about his actions in setting up
5   camp.  Moreover, plaintiff's understanding of unconsciousness is not consistent with the
6   legal definition.  Plaintiff does not allege that he was ever unconscious due to
7   somnambulism, a blow on the head, or a similar cause, only that he was unconscious from
8   sleeping.

9        The same analysis that applies to the "unconscious" exemption above applies to the
10  "misfortune" exemption as well.  Far from camping on public land by accident, plaintiff
11  camped illegally and deliberately and was told on several occasions to remove himself and
12  his property from public land.  Even if he camped accidentally the first time he was cited on
13  January 28, 2009, this first citation gave him notice of the camping ban.  All subsequent
14  actions in setting up camp were not accidental.

15       3.     The camping ban is not unconstitutionally vague.

16       The "void-for-vagueness" doctrine is rooted in due process principles.  Nunez v. City
17  of San Diego, 114 F.3d 935, 940 (9th Cir. 1997).  Specifically, the federal Constitution, by
18  way of the Fifth and Fourteenth Amendments, and the California Constitution, by way of
19  Article I, § 7, demand that no person be deprived of "life, liberty, or property without due
20  process of law."  Tobe, 892 P.2d at 1106.  To satisfy the requirement of due process, a
21  statute must (1) be sufficiently definite so that a person knows what conduct is prohibited
22  and (2) provide sufficiently definite guidelines to allow police to enforce the law in a non-
23  arbitrary and nondiscriminatory manner.  Id. at 1106-07.  See also Nunez, 114 F.3d at 940;
24  Kolender v. Lawson, 461 U.S. 352, 357 (1983).  There is a strong presumption towards
25  upholding a statute unless its unconstitutionality is unmistakable.  Tobe, 892 P.2d at 1107.
26  When assessing the vagueness of a statute, its language must be read in the context
27  provided by the express purpose of the statute.  Id.
28

1   In <u>Tobe</u>, the California Supreme Court viewed the Santa Ana ordinance prohibiting

2   camping and storing of personal property in public areas in light of the express purpose of

3   the ordinance.  <u>Id.</u>  The purpose of the ordinance was to make public streets and other

4   areas readily accessible to the public and to prevent public property from being used for

5   camping or storing personal property.  <u>Id.</u>  The prohibited activities interfered with the rights

6   of others to use the areas for their intended purposes.  <u>Id.</u>  Against this purpose, the court

7   held that the ordinance was not unconstitutionally vague.  <u>Id.</u> at 1108.

8   Here, the court agrees with defendants' arguments.  As defendants point out, the

9   camping ban satisfies the constitutional mandate of due process by providing both

10  adequate notice that camping is prohibited and sufficiently definite guidelines to the Marin

11  County Open Space for non-arbitrary enforcement of the ban.  The language of the

12  ordinance is simple and straightforward.  Only overnight camping and possession of

13  camping gear, without written permission, is prohibited.  The ordinance elaborates on what

14  could constitute "camping gear," helping deputies and agents to enforce the ordinance in a

15  non-arbitrary manner.  Moreover, the purpose of the camping ban is "to assure stewardship

16  and protection of lands owned or managed by Marin County Open Space District."

17  Request for Judicial Notice, Exhibit B at 2.  When read in light of this purpose, the

18  ordinance is not unconstitutionally void for vagueness.   Control of activities, such as

19  overnight camping, is consistent with Marin County Open Space's stewardship and

20  protection of the land.

21  Accordingly, the court GRANTS defendants' motion for summary judgment based on

22  the foregoing reasons.

23      4.   <u>The individual defendants are protected by qualified immunity.</u>

24  Although the court does not need to consider whether qualified immunity is a viable

25  defense for the individual defendants in view of the foregoing analysis, the court does so

26  nonetheless and finds that the individual defendants are indeed protected by qualified

27  immunity.

28

11

1     Under the doctrine of qualified immunity, public officials are protected from civil

2  liability to the extent that their conduct does not violate clearly established statutory or

3  constitutional rights of which a reasonable person would have known.  <u>Brewster v. Board of</u>

4  <u>Education</u>, 149 F.3d 971, 977 (9th Cir. 1998) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818

5  (1982)).  When a public official asserts qualified immunity, a court "must determine

6  whether, in light of clearly established principles governing the conduct in question, the

7  officer objectively could have believed that his conduct was lawful."  <u>Act Up!/Portland v.</u>

8  <u>Bagley</u>, 988 F.3d 868, 871 (9th Cir. 1993).  This judicial determination can be broken down

9  to two steps: (1) was the law governing the official's conduct clearly established? and (2)

10  under that law, could a reasonable officer have believed that the conduct was lawful?  <u>Id.</u>

11     Against this overview, the Ninth Circuit in <u>Grossman v. City of Portland</u>, 33 F.3d

12  1200, 1209 (9th Cir. 1994), held that an officer who relies on a statute that a reasonable

13  officer could believe was constitutional is immune from liability, even if the statute is later

14  found to be unconstitutional.  <u>Id.</u>  This is because by enforcing the ordinance, the officer is

15  entitled to assume that city council members had obtained legal advice and determined that

16  the ordinance was constitutional.  <u>Id.</u> at 1209.  As broad as qualified immunity is, the court

17  noted it is not without limitations.  <u>Id.</u> at 1209-10.  For example, an officer is not entitled to

18  qualified immunity if he or she enforces a statute authorizing official conduct that is

19  "patently violative of fundamental constitutional principles."  <u>Id.</u> at 1209.  An officer is also

20  not entitled to immunity if he or she unlawfully enforces the statute in a particularly

21  egregious manner or unreasonably exceeds the bounds of the statute, even if the statute is

22  constitutional.  <u>Id.</u> at 1210.

23     In <u>Grossman</u>, the plaintiff participated in a small protest at a park.  <u>Id.</u> at 1201.  The

24  group did not have a permit for the protest.  <u>Id.</u>  One of the defendants, the arresting police

25  officer, arrested the plaintiff for violating the ordinance that prohibited organized

26  demonstration or public gathering in a park without a written permit.  <u>Id.</u>  The plaintiff filed a

27  § 1983 action against the city and the police officer.  <u>Id.</u> at 1203.  The Ninth Circuit held that

28  the defendant officer was protected by qualified immunity because the plaintiff's conduct

did in fact violate the ordinance and it was objectively reasonable for the officer to rely on the city council's determination that the ordinance was constitutional. Id. at 1209. The ordinance was not so clearly unconstitutional that a reasonable officer should have refused to enforce it. Id.

Except for the proscribed conduct, the instant case is factually analogous to Grossman. Like the plaintiff in Grossman, plaintiff here unlawfully engaged in conduct that required prior written permission. And like in Grossman, defendants were aware of the ordinance that plaintiff was violating and accordingly, cited plaintiff for the violation. The Grossman holding compels the court to conclude that defendants are entitled to qualified immunity because it was objectively reasonable for them to rely on the Marin County Open Space's determination that the camping ban was constitutional. Moreover, the circumstances that would preclude qualified immunity are not present here. The camping ban was not so "patently violative of fundamental constitutional principles" that the defendants should not have enforced it. Nor did the defendants enforce the statute in a particularly egregious manner. They merely cited plaintiff for his violations and gave him time to move his property from public land.

## CONCLUSION

For all the foregoing reasons, the court hereby GRANTS defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 21, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

13