UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES BYON NISHI,

    Plaintiff,

    v.

COUNTY OF MARIN, et. al.

    Defendants.

_____/

No. C11-0438 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants' motion for summary judgment came on for hearing before this court on February 15, 2012. Plaintiff Charles Byon Nishi ("Nishi" or "plaintiff"), pro se, did not appear for the hearing. Defendants Marin County Open Space District ("Marin County Open Space"), Marin County Sheriff Deputies Brendon Bosse ("Bosse") and Robert McDaniels ("McDaniels"), and Ranger Don Grafe (collectively "County defendants" or "defendants") appeared through their counsel, Renee Giacomini Brewer. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendants' motion for summary judgment for the reasons stated below.

**BACKGROUND**

A.    Background Allegations

This action arises out of plaintiff's claim that his civil rights were violated under 42 U.S.C. §§ 1982, 1983, and 1985. Plaintiff alleges that on or about January 28, 2009, Deputies Bosse and McDaniels, California Department of Fish and Game ("DFG") Agent Rich Mead, and an unknown DFG agent or deputy[1] arrived at the Indian Valley Open Space Preserve to investigate plaintiff's claim that two neighbors were poaching mountain

---

[1] According to the motion for summary judgment, this unknown agent or deputy may have been Ranger Grafe. See Motion for Summary Judgment ("MSJ") at 3: 22-23.

lions. See First Amended Complaint ("FAC"), ¶ 3.1. According to defendants' answer, plaintiff himself called the deputies to report his neighbors' poaching activities. See Answer, ¶ 3.1.

After plaintiff relayed his observations of the poaching activities to the deputies and agents, the deputies and agents spoke with plaintiff and accused him of stealing a Ranger's gun. FAC, ¶ 3.7. The deputies and agents then "demanded to know" the location of plaintiff's residence. FAC, ¶ 3.8. After a forty five minute search, the deputies and agents located plaintiff's residence. FAC, ¶ 3.9. Plaintiff alleges that the deputies and agents "ransacked [his] residence destroying property and chasing companion animals away from [his] residence" without a search warrant. Id. Plaintiff further alleges that the deputies and agents took his car keys and entered the locked vehicle, again without a warrant, in order to search for the Rangers gun. FAC, ¶ 3.10. The only thing found during the search was a single bird feather which plaintiff alleges was a turkey feather. FAC, ¶ 3.11. The deputies and/or agents "disposed of [his] property." FAC, 11:18-19, ¶ 3.14; Answer, ¶ 3.14.

That same day, plaintiff was cited for illegally camping on public land. FAC, ¶ 3.12. The ordinance that prohibits overnight camping without written permission is found at § 100.02.060 ("the camping ban") of the Marin County Open Space ordinances. See Request for Judicial Notice, Exhibit C at 4. The deputies informed plaintiff that he had seven days to move his belongings. FAC, ¶ 3.13. In their answer, defendants admit to giving plaintiff time to move his belongings but do not specify how much time was given. Answer, ¶ 3.13.

On several more occasions, plaintiff was asked to leave public land. FAC, ¶ 3.16. They are as follows:

On or about March 3, 2009, McDaniels arrived at plaintiff's campsite on public land in response to a citizen complaint filed by Eric Roberts ("Roberts"). FAC, ¶ 3.17; Answer, ¶ 3.17. McDaniels informed plaintiff that he was illegally camping on public land and had until the next morning to move or face arrest and confiscation of his property. FAC, ¶ 3.17. Plaintiff alleges that due to a disability, he could not move all of his property in the allotted

time.  Id.  As a result, his property was "illegally taken by Sheriff [Deputies]."  Id.  Plaintiff asserts that Roberts and McDaniels conspired together to remove plaintiff from public land.  Id.

On or about July 24, 2009 and sometime in November 2009, Bosse and Grafe again cited plaintiff for illegally camping on public land.  FAC, ¶ 3.18; Answer, ¶ 3.18.  Plaintiff claims that Bosse also charged him for crimes that currently do not exist under any law or ordinance.  Id.

Plaintiff alleges that there were additional instances in which plaintiff was "forced from his residence."  Id.  He plans to address them in an amended complaint with newly named defendants.  Id.

In the FAC, plaintiff also describes, at length, events that have no bearing on his claims of civil right violations.  On at least fifteen occasions, from January 24, 2009 through March 25, 2010, plaintiff witnessed unknown DFG agents, unknown rangers, and unknown and known deputies (Bosse) poach and/or sport hunt protected animals on the Indian Valley Preserve and College of Marin.  FAC, ¶ 3.20-3.21.  On or about February 3, 2010, plaintiff alleges that an agent "shot toward or directly" at him, killing a nearby raccoon.  FAC, ¶ 3.21.  This raccoon was then placed inside a large black box that contained a "deadly gas."  Id.  Plaintiff alleges he was exposed to the chemical due to his proximity and downwind location and became sick and delirious.  Id.  On February 11, 2010, plaintiff filed a complaint with the F.B.I in response to threats he received from Bosse.  FAC, ¶ 3.22.  These threats in turn arose from plaintiff's civil rights complaints and his citizen investigation into a poaching scheme that involved DFG agents, deputies, and rangers.  Id.  The complaint concludes with plaintiff alleging that forty known and unknown law enforcement officers, numerous dogs, three helicopters, two planes, and "thermo imagine equipment" were used to "hunt" him down for over a year.

B.   Procedural History

Plaintiff originally filed the instant action against defendants DFG and DFG Game Wardens Mead and Peter Georges (collectively "State defendants"), as well as against the

County defendants Marin County Open Space, Bosse, McDaniels, and Grafe. Plaintiff's three causes of action alleged civil rights violations pursuant to 42 U.S.C. §§ 1982, 1983, and 1985(3).

On May 11, 2011, the court granted two motions to dismiss, one filed by the State defendants, and the other by the County defendants. With respect to the State defendants, the court dismissed, with prejudice, plaintiff's claims against DFG based on Eleventh Amendment immunity. See Order Granting Motions to Dismiss, 1: 25-28. To the extent the individual State defendants were sued in their official capacities, the court also dismissed, with prejudice, plaintiff's claims for prospective injunctive relief because plaintiff failed to allege any grounds upon which the Ex part Young doctrine could apply. Id. at 2: 18-20

With respect to the County defendants, the court dismissed plaintiff's claims on two grounds, with leave to amend. First, the court dismissed plaintiff's claim to the extent that it alleged defendants' actions were based on non-existent law or regulation. Judicially noticeable facts submitted by defendants established the existence of relevant regulation. See Order Granting Motions to Dismiss, 3: 17-19. Second, to the extent that plaintiff challenged the constitutionality of such regulation or law, the court dismissed his claim for failing to allege sufficient facts. Id. at 3: 19-22  The court noted a third possible ground for dismissal, qualified immunity. However, because defendants had not pled qualified immunity as a defense, the court determined that it did not present an adequate basis for dismissal. Id. at 4: 15-17.

Plaintiff duly filed his amended complaint on May 27, 2011. In addition to naming the County defendants, the amended complaint continued to name the State defendants. FAC at 5-6. The amended complaint alleged the same causes of action as his original complaint, namely, the violation of his civil rights under 42 U.S.C. §§ 1982, 1983, and 1985. Id. at 6.

On December 20, 2011, the County defendants moved for summary judgment or in the alternative, summary adjudication. See MSJ at 1.

Plaintiff did not file an opposition brief. Accordingly, the County defendants did not

4

file a reply brief.

## DISCUSSION

A.   Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

B.   Legal Analysis

Defendants generally argue that summary judgment must be granted in their favor because the camping ban is not unconstitutional and even if it is, the individual defendants are entitled to qualified immunity. In support of their first position that the camping ban is not unconstitutional, defendants make three specific arguments: (1) the camping ban does not violate plaintiff's Fifth and Fourteenth Amendment rights, including his right to travel; (2) the camping ban does not conflict with Penal Code § 26; and (3) the camping ban is not

unconstitutionally void for vagueness.

      1.      <u>The camping ban does not violate plaintiff's right to travel</u>.

The Marin County Open Space ordinance for which plaintiff was cited for violating is § 100.02.060 ("the camping ban").[2]

Although the federal Constitution does not expressly recognize the right to travel, this right is viewed as a fundamental right, rooted in the due process clause of the Fourteenth Amendment. <u>City of Chicago v. Morales</u>, 527 U.S. 41, 53 (1999). The California Constitution recognizes the right of intrastate travel as a basic human right protected by article I, §§ 7 and 24. <u>Tobe v. City of Santa Ana</u>, 9 Cal. 4th 1069, 1100 (Cal., 1995). The right to travel is considered a part of personal liberty, under which all citizens can "travel throughout the length and breadth of our land uninhibited by statutes, rules or regulations which unreasonably burden or restrict this movement." <u>Id.</u> at 1098.

Though the right to travel is deemed vital to the concept of a democratic society, it is not so broad that it requires a state or governmental entity to provide its citizens with the means to enjoy that right. <u>Id.</u> at 1103 (citing <u>Harris v. McRae</u>, 448 U.S. 297, 317-18 (1980)). It also does not give a citizen a "right to live or stay where one will," whether it is on public or private property. <u>Id.</u> Moreover, the right to travel is not impermissibly infringed by indirect or incidental burdens on travel that result from otherwise lawful ordinances. <u>Id.</u> at 1101.

In <u>Tobe</u>, Santa Ana passed ordinances that banned camping and storing of personal property in public places. <u>Id.</u> at 1081. Plaintiffs claimed that the ordinances were unconstitutional because they restricted their right to travel. <u>Id.</u> at 1082, 1104. The California Supreme Court concluded that Santa Ana was not constitutionally obligated "to

---

[2] Although plaintiff claims three Marin County Open Space ordinances (§§ 100.01.030 Lands open to the public; 10.03.130 Unauthorized structures, encroachments and signs; and 100.02.060 Camping) are unconstitutional for violating his right to travel, the crux of his claims and the exclusive focus of defendants' arguments are on § 100.02.060, the camping ban. FAC, 10: 19-26.

The language of § 100.02.060 is as follows: "No person shall camp overnight or shall possess camping gear within district lands except by written permission from the district. Camping gear includes sleeping bags, tents, or other articles associated with overnight camping." Request for Judicial Notice, Exhibit C at 4.

make accommodations on public property available to the transient homeless to facilitate their exercise of the right to travel." Id. at 1103.  Additionally, the court held that the ordinances were constitutionally valid because they were nondiscriminatory and had at best, an incidental impact on the right to travel.  Id. at 110.  The ordinances were nondiscriminatory because they did not distinguish between residents and non-residents, or between those who were homeless and those who were not.  Id. at 1101-02.  Rather, the ordinances prohibited "*any* person" from camping and/or storing personal property in public places.  Id. at 1102.  As for the impact on the right to travel, the court acknowledged that the ordinances may deter travel by some individuals who cannot afford or obtain other accommodations in the area to which they travel, but found nevertheless, that the impact constituted only an incidental burden on the travel of some individuals.  Id. at 1101.

       Similar to the ordinances in Tobe, the camping ban in the instant case prohibits a person from camping on public property.  Defendants correctly assert that the camping ban is nondiscriminatory.  It does not distinguish between resident and non-resident, or between those who are homeless and those who are not.  The camping ban applies equally to everyone, as evidenced by the language, "no person."  The nondiscriminatory camping ban's impact on an individual's right to travel is at best, incidental.  Individuals, such as plaintiff, can freely move within the public land as part of their personal liberty.  The camping ban merely prohibits individuals from camping overnight without written permission.  As noted in Tobe, a government entity, such as the Marin County Open Space, is not constitutionally obligated to facilitate the right to travel.

       The FAC cites to Pottinger v. City of Miami, 810 F. Supp. 1551 (S.D. Fla. 1992), to assert that the camping ban unconstitutionally burdens his right to travel.  FAC at 9: 22.  Defendants in their motion for summary judgment contend that Pottinger is distinguishable.

       In Pottinger, plaintiffs filed suit against the city of Miami for ordinances that prohibited people from engaging in essential, life-sustaining activities, such as sleeping, eating, standing, and congregating, in any public place, including the park, sidewalks, and public buildings.  Id. at 1554, 1559-60.  The Pottinger court found that Miami had a pattern

7

of arresting homeless people in order to drive them away from public places. Id. Because the ordinances "effectively bann[ed] homeless individuals from all public areas and deni[ed] them a single place where they [could] be without violating the law," the court concluded that the ordinances unconstitutionally burdened homeless individuals' freedom of movement. Id. at 1581. The ordinances effectively prevented homeless people from coming into Miami and burdened the freedom of movement of those already present. Id.

The court finds that Pottinger is distinguishable from the instant case for several reasons. First, unlike the defendant in Pottinger, defendants here have not been shown to have engaged in a pattern of targeting homeless people. Plaintiff does not allege that defendants have such a history. Second, the camping ban is not as prohibitive as the ordinances in Pottinger. While the Pottinger ordinances prohibited various life-sustaining activities, the camping ban prohibits only overnight camping and the possession of camping gear, and even then, only if there is no written permission. The camping ban does not prohibit individuals from eating, standing or congregating on public land.

2.  The camping ban does not conflict with Penal Code § 26.

Under California Penal Code § 26, certain individuals are exempt from criminal liability. The relevant exemptions include "[p]ersons who committed the act charged without being conscious thereof" and "[p]ersons who committed the act or made the omissions charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." FAC, 10: 4-6; MSJ, 6: 25-28.

An unconscious act is one in which a person is not conscious of acting because of "somnambulism, a blow on the head, or similar cause." People v. Ferguson, 194 Cal. App. 4th 1070, 1083 (2011). The act therefore is not volitional. Id. Unconsciousness is not limited to lying still and being unresponsive. Id. It can exist "where the subject physically acts in fact but is not, at the time, conscious of acting." Id. As for the term, "misfortune," it can be defined as an accident while doing a lawful act. People v. Gorgol, 122 Cal. App. 2d 281, 308 (1953).

Plaintiff argues that the camping ban violates Penal Code § 26 because it penalizes

him for sleeping, an unconscious and involuntary act. FAC, 11: 1-3. Because the daily act of sleeping renders him unconscious, plaintiff is exempt from criminal liability pursuant to Penal Code § 26. He also contends that the camping ban violates Penal Code § 26 because his actions amounted to misfortune and Penal Code § 26 also exempts acts based on misfortune. Plaintiff does not specify any allegations to support his conclusory reference to misfortune. FAC, 11: 13.

Defendants respond that the camping ban does not violate Penal Code § 26 for two reasons. First, Penal Code § 26 does not even apply because the camping ban is not a criminal statute and as such, does not require scienter. Northern Wind v. Daley, 200 F.3d 13, 19 (1st Cir. 1999) (holding that "scienter is not required to impose civil penalties for regulatory violations when the regulation is silent as to state of mind"). Second, even if Penal Code § 26 did apply, plaintiff does not fall within the categories of exemption because plaintiff was not unconscious while camping on public land and he did not camp by misfortune or accident.

Though their first argument is untenable, the court agrees with defendants that the camping ban does not violate Penal Code § 26.

Defendants incorrectly assert that the camping ban is not a criminal statute and as such, Penal Code § 26 does not apply. However, § 100.01.060, titled "Misdemeanors and infractions," states that a violation of the camping ban is a misdemeanor. Request for Judicial Notice, Exhibit C at 7. Given the possibility of criminal liability, Penal Code § 26 is applicable and could potentially exempt an individual whose actions fell within one of the categories of exemption.

Defendants, however, correctly contend that even if Penal Code § 26 applies, it would not exempt plaintiff from liability because he fails to satisfy any of the exemption categories. With respect to an exemption based on unconsciousness, plaintiff's argument that sleeping is an unconscious act sufficient to exempt him from criminal liability is not only misplaced but does not conform to the definition of unconsciousness in the criminal law context. Plaintiff's unconsciousness while sleeping has no bearing on the real issue of

9

whether he was unconscious when he engaged in the act for which he was cited, namely, illegally camping on public land. As alleged in the complaint itself, plaintiff illegally camped on public land and was cited for this violation several times over a period of a few months. There appears to be nothing unconscious or involuntary about his actions in setting up camp. Moreover, plaintiff's understanding of unconsciousness is not consistent with the legal definition. Plaintiff does not allege that he was ever unconscious due to somnambulism, a blow on the head, or a similar cause, only that he was unconscious from sleeping.

The same analysis that applies to the "unconscious" exemption above applies to the "misfortune" exemption as well. Far from camping on public land by accident, plaintiff camped illegally and deliberately and was told on several occasions to remove himself and his property from public land. Even if he camped accidentally the first time he was cited on January 28, 2009, this first citation gave him notice of the camping ban. All subsequent actions in setting up camp were not accidental.

3. <u>The camping ban is not unconstitutionally vague.</u>

The "void-for-vagueness" doctrine is rooted in due process principles. <u>Nunez v. City of San Diego</u>, 114 F.3d 935, 940 (9th Cir. 1997). Specifically, the federal Constitution, by way of the Fifth and Fourteenth Amendments, and the California Constitution, by way of Article I, § 7, demand that no person be deprived of "life, liberty, or property without due process of law." <u>Tobe</u>, 892 P.2d at 1106. To satisfy the requirement of due process, a statute must (1) be sufficiently definite so that a person knows what conduct is prohibited and (2) provide sufficiently definite guidelines to allow police to enforce the law in a non-arbitrary and nondiscriminatory manner. <u>Id.</u> at 1106-07. <u>See also</u> <u>Nunez</u>, 114 F.3d at 940; <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983). There is a strong presumption towards upholding a statute unless its unconstitutionality is unmistakable. <u>Tobe</u>, 892 P.2d at 1107. When assessing the vagueness of a statute, its language must be read in the context provided by the express purpose of the statute. <u>Id.</u>

In Tobe, the California Supreme Court viewed the Santa Ana ordinance prohibiting camping and storing of personal property in public areas in light of the express purpose of the ordinance. Id. The purpose of the ordinance was to make public streets and other areas readily accessible to the public and to prevent public property from being used for camping or storing personal property. Id. The prohibited activities interfered with the rights of others to use the areas for their intended purposes. Id. Against this purpose, the court held that the ordinance was not unconstitutionally vague. Id. at 1108.

Here, the court agrees with defendants' arguments. As defendants point out, the camping ban satisfies the constitutional mandate of due process by providing both adequate notice that camping is prohibited and sufficiently definite guidelines to the Marin County Open Space for non-arbitrary enforcement of the ban. The language of the ordinance is simple and straightforward. Only overnight camping and possession of camping gear, without written permission, is prohibited. The ordinance elaborates on what could constitute "camping gear," helping deputies and agents to enforce the ordinance in a non-arbitrary manner. Moreover, the purpose of the camping ban is "to assure stewardship and protection of lands owned or managed by Marin County Open Space District." Request for Judicial Notice, Exhibit B at 2. When read in light of this purpose, the ordinance is not unconstitutionally void for vagueness. Control of activities, such as overnight camping, is consistent with Marin County Open Space's stewardship and protection of the land.

Accordingly, the court GRANTS defendants' motion for summary judgment based on the foregoing reasons.

4. <u>The individual defendants are protected by qualified immunity.</u>

Although the court does not need to consider whether qualified immunity is a viable defense for the individual defendants in view of the foregoing analysis, the court does so nonetheless and finds that the individual defendants are indeed protected by qualified immunity.

1 | Under the doctrine of qualified immunity, public officials are protected from civil liability to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Brewster v. Board of Education, 149 F.3d 971, 977 (9th Cir. 1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a public official asserts qualified immunity, a court "must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." Act Up!/Portland v. Bagley, 988 F.3d 868, 871 (9th Cir. 1993). This judicial determination can be broken down to two steps: (1) was the law governing the official's conduct clearly established? and (2) under that law, could a reasonable officer have believed that the conduct was lawful? Id.

Against this overview, the Ninth Circuit in Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994), held that an officer who relies on a statute that a reasonable officer could believe was constitutional is immune from liability, even if the statute is later found to be unconstitutional. Id. This is because by enforcing the ordinance, the officer is entitled to assume that city council members had obtained legal advice and determined that the ordinance was constitutional. Id. at 1209. As broad as qualified immunity is, the court noted it is not without limitations. Id. at 1209-10. For example, an officer is not entitled to qualified immunity if he or she enforces a statute authorizing official conduct that is "patently violative of fundamental constitutional principles." Id. at 1209. An officer is also not entitled to immunity if he or she unlawfully enforces the statute in a particularly egregious manner or unreasonably exceeds the bounds of the statute, even if the statute is constitutional. Id. at 1210.

In Grossman, the plaintiff participated in a small protest at a park. Id. at 1201. The group did not have a permit for the protest. Id. One of the defendants, the arresting police officer, arrested the plaintiff for violating the ordinance that prohibited organized demonstration or public gathering in a park without a written permit. Id. The plaintiff filed a § 1983 action against the city and the police officer. Id. at 1203. The Ninth Circuit held that the defendant officer was protected by qualified immunity because the plaintiff's conduct

did in fact violate the ordinance and it was objectively reasonable for the officer to rely on the city council's determination that the ordinance was constitutional. Id. at 1209. The ordinance was not so clearly unconstitutional that a reasonable officer should have refused to enforce it. Id.

Except for the proscribed conduct, the instant case is factually analogous to Grossman. Like the plaintiff in Grossman, plaintiff here unlawfully engaged in conduct that required prior written permission. And like in Grossman, defendants were aware of the ordinance that plaintiff was violating and accordingly, cited plaintiff for the violation. The Grossman holding compels the court to conclude that defendants are entitled to qualified immunity because it was objectively reasonable for them to rely on the Marin County Open Space's determination that the camping ban was constitutional. Moreover, the circumstances that would preclude qualified immunity are not present here. The camping ban was not so "patently violative of fundamental constitutional principles" that the defendants should not have enforced it. Nor did the defendants enforce the statute in a particularly egregious manner. They merely cited plaintiff for his violations and gave him time to move his property from public land.

**CONCLUSION**

For all the foregoing reasons, the court hereby GRANTS defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 21, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge